lant, his counsel, who prepared the reasons of appeal, not adverting to the express and imperative provision of the law which debars the judge upon appeal from investigating any other questions, however obvious they may be, than those specifically presented by the reasons of appeal, has presented none among the reasons he has filed in this case which raise the question of priority between the parties in the use of embossed rollers. That was the most material question in the cause, and having myself called the attention of the counsel who argued the cause (he was not the same who prepared the reasons of appeal) to this difficulty, he has, with very becoming candor, admitted in his supplemental argument that the point is not presented for my consideration by any just construction of the reasons filed. This being conceded, I am obliged to pass by the consideration of all those parts of the testimony in the case bearing upon the question of priority of invention of that device.

Of the specific reasons assigned, the first seems designed to assert that the office is estopped from determining the true limits of patentable invention by the admission or statements of the contestants in their specifications that some other device is the patentable equivalent of the one claimed. The rules and principles which govern the law of estoppel have no relation to such a state of case. Whether two things are or are not equivalents is matter of skill and sound judgment, for the determination of the office, which can in no way be limited or restrained by the admissions or denial of parties. The fourth reason of appeal is very similar to the first, alleging error to be in the award of priority to Hutchinson for an invention described by him in Dec., 1858, notwithstanding Meyer, in Oct., 1857, described and experimented with what Hutchinson himself claims as an equivalent. Unless it were really the equivalent of Hutchinson's invention, the fact that Hutchinson so described it cannot avail, and the priority of discovery of a non-equivalent is no bar to his patent. It seems to me very clear that the separate patterns are not the equivalents of the embossed roller, the latter having advantages in economy and rapidity of application which give to it a superiority over the former, which superiority will support a patent, notwithstanding the fact that the article of which it is the supposed equivalent was first discovered, and may itself possess merit enough to uphold a patent.

In looking through the decision of the office, I do not find any such proposition decided as is covered by the second reason of appeal. The commissioner was of opinion that there was a radical difference between the invention of the separate patterns and the embossed roller and awarded priority of invention as to the latter to Hutchinson upon the evidence as he construed it, but decided

no such erroneous principle of law, as is embodied in the reason in question. Nor do I think that the office has given any conclusive weight, as alleged in the third reason of appeal, "to the testimony of" one witness for the appellant to the exclusion of others who testify to the economic utility of separate patterns. In passing, the commissioner alludes to the testimony of one witness as to the efficiency of the system of working with separate patterns, but this allusion is manifestly in connection with the question of equivalency of the two inventions, and in that aspect I do not see any error in his judgment upon the reason assigned. Nor does the commissioner any where decide the point that separate patterns are not of themselves patentable. He intimates, indeed, an opinion on the point, but does not decide that question; and if it were decided, there is nothing in the reasons of appeal to present that matter for my review. He appears really to have considered only the two points of equivalency of the separate patterns to the embossed rollers and the priority of invention of the embossed rollers.

I regret extremely that the reasons of appeal as framed do not present the merits of the case fully for my consideration. Whatever judgment I might have formed upon the case and the testimony if presented to me in a different form, I must, upon the case as made, affirm the decision of the office.

## Case No. 6,958.

HUTCHINSON et al. v. PEYTON et al.

[2 Cranch, C. C. 365.] [1]

Circuit Court, District of Columbia. Nov. Term, 1822.

EVIDENCE—PAROL—PARTNERSHIP — PROOF OF INSURANCE.

1. If an agreement in writing be made by one of the partners of a mercantile firm, it is competent for the plaintiffs, in an action in the name of the members of the firm, to prove, by parol, that it was made by that partner as the agent, and for the use and benefit of the firm.

2. The fact that insurance was made, cannot be proved without producing the policy, or showing it to be lost.

An agreement in writing, respecting the advance of bills on London to the amount of £4,000 sterling, and the consignment of a cargo of flour to John Traverse, one of the plaintiffs, in Lisbon, was made between the defendants and the said Traverse. In an action by the firm [Hutchinson, Traverse & Co.], their counsel offered parol evidence to prove that the agreement, although in the name of Traverse alone, was made by him as the agent and for the use and benefit of the firm.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Swann and Mr. Hewitt, for defendants, objected that it was not competent evidence, because it contradicts the written papers in which the name of the firm is not mentioned.

But THE COURT (THRUSTON, Circuit Judge, absent) overruled the objection and admitted the evidence.

The plaintiffs, to support a charge for the premium of insurance, gave in evidence the defendants' orders to Traverse to cause insurance to be made, and the deposition of a witness stating positively that insurance was made by Baring & Co. in London; and the acknowledgment of Peyton, one of the defendants, that the premium was reasonable.

But THE COURT (THRUSTON, Circuit Judge, absent, and CRANCH, Chief Judge, doubting) said that it was necessary to produce the policy, or to show it to be lost.

The plaintiffs became nonsuit with leave to move to reinstate the cause, on the ground of misdirection to the jury by the court. But it was not moved again.

---

HUTCHINSON (UNITED STATES v.). See Case No. 15,431.

HUTCHINSON (WHIPPLE v.). See Case No. 17,517.

HUTCHINSON (UNITED STATES v.). See Case No. 15,432.

---

### Case No. 6,959.

#### HUTSON v. JORDAN et al.

[1 Ware (385) 393; [1] 18 Am. Jur. 294.]

District Court, D. Maine. June Term, 1837.

ADMIRALTY—PRACTICE—FORM OF LIBEL—ANSWER.

1. In the admiralty, the libellant is required to verify the debt or cause of action on which a libel is founded, by his oath.

2. In like manner the respondent is required to verify his answer by oath.

3. There is no rule in the admiralty like that in equity, which precludes the court from making a decree, against a denial by the answer of any matter alleged in the libel, unless it is disproved by two witnesses.

[Cited in Jay v. Almy, Case No. 7,236; The Moslem, Id. 9,876.]

4. How far the answer in the admiralty is considered evidence.

[Cited in Cushman v. Ryan, Case No. 3,515; Havermeyer's & Elder Sugar Refining Co. v. Campania Transatlantica Espanola. 43 Fed. 91.]

This was a libel for an assault and battery, by a seaman against the master and mate. The facts in the case, as well as the grounds taken by the counsel, in the argument, are fully stated in the opinion of the court.

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

Mr. Haines, for libellant.
C. S. Daveis, for respondent.

WARE, District Judge. This is a libel for a marine trespass. The libel alleges a joint assault by the master and the mate. The assault is admitted by the mate in his answer, and is fully proved by the witnesses, though not with all the aggravating circumstances stated in the libel. It was not only severe, but at the particular time when it took place, it was without provocation, and is clearly a case for damages.

The case of the master requires more consideration. Hutson, in his libel, states that while the mate was pursuing him on the deck, and flogging him with a cow-skin, he fled to the companion-way and called on the master, who was in the cabin, to protect him; that the master, instead of interposing for his protection, ordered the mate to take him forward and flog him. If the facts were proved as alleged, I should feel no difficulty, on the supposition that there was no justifiable cause for punishment, in holding the master jointly responsible for the assault. The law vests in the master the whole authority for the government of the crew, and for the maintenance of discipline on board the vessel. The inferior officers are subject to his control, and bound as well as the men to execute his orders, and if any inflict punishment by his command, the act is considered as his. But the master is bound also to protect his men against the oppression and cruelty of his subordinate officers, and if he permits them to be abused, without interposing for their protection, the just inference is, that he authorizes the act of his subordinates, and he becomes legally a party to it. But the allegation, in the material part of it, is directly contradicted by the master in his answer. He denies that he had any knowledge of the assault of the mate, until it was ended. He says, that "hearing a sudden noise on deck, he went to the companion-way, where he saw Hutson with the mate having hold of him. He asked what was the matter, and the mate replied, that Hutson had been striking the second mate, and that he had been taking him to do for it; that he then told Osgood (the mate) to take the man forward and set him at work, and that if he ever lifted his hand against an officer again, to let him know it, and he would correct him." The cook, who was the only witness to this part of the affair, gives a different account from that of either the libellant or the master. He says, that when Hutson called on the master, though he called with a very loud voice, he gave no answer and took no notice of it, and that the assault was still continued by the mate. If the witness is to be credited, even without referring to the master's answer, it can hardly be doubted, but that he must have heard repeated and loud calls upon him, and there can be as little